IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

TRISHA BAER,

               *Plaintiff,*

      v.

                         No. 1:25-cv-774 (PTG/LRV)

CYBERDATA TECHNOLOGIES, INC.,

              *Defendant.*

## ORDER

This matter comes before the Court on Defendant's Motion to Dismiss for Failure to State a Claim (the "Motion"), Plaintiff's Motion for Expedited Review of Pending Motions (Dkt. 32), Plaintiff's Motion for Sanctions (Dkt. 36), and Plaintiff's Motion to Strike for Improper Evidence (Dkt. 38). On May 5, 2025, Plaintiff Trisha Baer, proceeding *pro se*, sued Cyberdata Technologies, Inc. ("Cyberdata"), bringing claims under the Fair Labor Standards Act ("FLSA") and Virginia common law. *See* Dkt. 1. On May 9, 2025, Plaintiff amended her complaint, making the Amended Complaint the operative one for purposes of this Motion. Dkt. 4. Claim 1 of the Amended Complaint alleges that Cyberdata improperly deducted wages from Plaintiff's salary in violation of FLSA. *Id.* at 5. Claim 2 alleges that Cyberdata wrongfully retaliated against Plaintiff in violation of FLSA for "rais[ing] [her] concern in writing." *Id.* Claim 3 alleges that Cyberdata defrauded Plaintiff under Virginia law by instructing her to delete hours recorded in a timekeeping application, claiming such revision was required by policy. *Id.* Claim 4 alleges that Cyberdata violated Virginia law by intentionally inflicting emotional distress ("IIED") on Plaintiff regarding the timecard situation and events related to it. *Id.* at 6. Claim 5 alleges that Cyberdata wrongfully

terminated Plaintiff in violation of public policy under Virginia Law. *Id.* Defendant seeks to dismiss the Amended Complaint in full. Dkt. 23. The Motion is fully briefed. *See* Dkts. 23, 25, 27, 30, 31, 54, 55, 56. For the reasons that follow, Defendant's Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

"When ruling on a Rule 12(b)(6) motion to dismiss, 'a judge must accept as true all of the factual allegations contained in the complaint.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)). To survive the motion, the complaint "must contain sufficient facts to state a claim that is 'plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). While *pro se* litigants "cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985).

As to Claim 1 (FLSA Violation), Plaintiff fails to state a claim. To state a claim under FLSA, "[t]he plaintiff employee must [allege] facts demonstrating a violation of some provision of the Act." *Clark v. J.M. Benson Co.*, 789 F.2d 282, 286 (4th Cir. 1986). Here, Plaintiff references 29 C.F.R. § 541.602, a regulation implementing FLSA. Dkt. 4 at 5. In pertinent part, under Section 541.602, an employer with a "bona fide plan, policy or practice of providing compensation" for "full-day absences occasioned by sickness or disability" can deduct the pay of a salaried, exempt employee if she exhausts her sick leave and thereafter takes a full day of absence. § 541.602(b)(2).

In her opposition, Plaintiff contends that Cyberdata has no "bona fide" plan as required by FLSA and therefore cannot deduct her pay—but she has pled in her Amended Complaint that Cyberdata indeed has an established "Paid Time Off . . . policy." *Compare* Dkt. 30 at 2, 9-10 *with*

2

Dkt. 4 at 5; *see also* U.S. Dep't of Labor, Wage & Hour Div. Op. Ltr. FLSA2006-32 (Sep. 14, 2007) ("The Wage and Hour Division has found that a plan that has defined sick leave benefits that have been communicated to eligible employees, and that operates as described in the plan, will in general qualify as bona fide.").[1] Even if the policy were considered non-bona fide, the result would be that Cyberdata "lose[s] the exemption" as to Plaintiff's employment position. § 541.603. For individuals considered non-exempt, FLSA only authorizes actions for "unpaid *minimum wages*, or [an employee's] unpaid *overtime* compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (emphasis added). Plaintiff does not seek minimum wages or unpaid overtime.

Moreover, Plaintiff does not indicate where the allegedly improper deduction of $2,693.34 comes from. Dkt. 4 at 5. Plaintiff does not indicate how this number is reflective of her salary, or how many days of work she missed, or the basis of her entitlement to the funds in dispute—whether they are "makeup hours," "advance Paid Time Off," overtime, or computations of a certain numbers of full days worked. *See* Dkt. 4 at 5. Given all of these reasons, there is no factual basis to support the plausibility of a violation of FLSA.[2]

As to Claim 2 (FLSA Retaliation), Plaintiff fails to state a claim for retaliation. "A plaintiff asserting a *prima facie* claim of retaliation under the FLSA must show that (1) [s]he engaged in an activity protected by the FLSA; (2) [s]he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the

---

[1] The dispute seems to be over Cyberdata's policy, or lack thereof, regarding the use of "makeup hours." Dkt. 4 at 5. As such, there is no clear claim under FLSA. *See* Dkt. 25 at 3-4.

[2] In her opposition, Plaintiff notes this figure represents "32 hours of unpaid leave." Dkt. 30 at 5. However, Plaintiff "cannot amend [her] complaint[] through briefing." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

employee's activity and the employer's adverse action." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008). The complaint describes Plaintiff's protected activity entirely as "I raised my concern in writing on December 18, 2024—and again on January 6, 2025 . . . ." Dkt. 4 at 5. However, to be considered a protected activity, an "internal complaint must . . . clearly raise an FLSA issue, because 'not every instance of an employee letting off steam constitutes the filing of a complaint within the meaning of § 215(a)(3).'" *Jafari v. Old Dominion Transit Mgmt. Co.*, 913 F. Supp. 2d 217, 226 (E.D. Va. 2012), *aff'd*, 538 F. App'x 238 (4th Cir. 2013) (quoting *Jafari v. Old Dominion Transit Mgmt. Co.*, 462 F. App'x 385, 389 (4th Cir. 2012)). Plaintiff provides no details regarding the substance of what she conveyed or to whom. As such, Plaintiff has failed to plead facts sufficient to show that she plausibly engaged in an activity protected by FLSA.

As to Claim 3 (Fraud, Virginia Law), Plaintiff plausibly pleads fraud. The elements of "actual fraud," under Virginia law, include "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Evaluation Rsch. Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994). Fraud is subject to a heightened pleading standard. *Sweely Holdings, LLC v. SunTrust Bank*, 820 S.E.2d 596 (Va. 2018) ("[F]raud, since it must be clearly proved, must be distinctly alleged; it will not do to state it argumentatively.").

Plaintiff alleges that the fraud occurred when she removed her timecard hours from the timekeeping system in reliance on Cyberdata's representation that the deletion was required by policy. Dkt. 4 at 5. Plaintiff claims this caused her to "lose over $2,600 in earned pay." *Id.* Plaintiff further alleges that the misrepresentation was "intentional," a "willful deception[,] and a retaliatory act meant to suppress protected activity." Dkt. 4 at 5. Taken as true, Plaintiff's allegations plausibly state a claim for fraud under Virginia law.

4

In response to Claim 3, Defendant initially argues that Plaintiff failed to plead reliance on an alleged misrepresentation. Dkt. 25 at 10. Defendant attempts to recast Plaintiff's allegations, stating that Plaintiff "took [time] off" not in reliance on a make-up hours policy, but really, because she was sick at home. *Id.* Defendant implies that staying home sick somehow negates Plaintiff's ability to rely on a leave policy. *See id.* Plaintiff's fraud allegations, however, concern an entirely different act. Plaintiff does not allege that a misrepresentation caused her to stay home when she was sick. Instead, she alleges that the fraud occurred afterwards, in the way she was required to track her hours. Thus, Defendant's argument here is unavailing.

Next, in its reply memorandum, Defendant argues for the first time that Claim 3 should be dismissed under the economic loss rule. Defendant asserts that Claim 3 is "a garden variety contract dispute [that] cannot be morphed into a fraud claim." Dkt. 31 at 7. Because "purely economic losses" cannot be recovered in tort, Defendant argues that Claim 3 must be dismissed. *Id.* But Defendant fails to develop this argument or provide any compelling argument as to why Claim 3 sounds in contract and not in fraud, which is how Plaintiff has alleged it. Accordingly, Defendant's argument on the economic loss rule is also unavailing.

As to Claim 4 (IIED, Virginia Law), Plaintiff fails to sufficiently allege any element of an IIED claim except that the alleged conduct caused Plaintiff emotional distress. Under Virginia law, where no physical injury is alleged, as here, a claim for IIED exists only where four elements are met:

> One, the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result. Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality. This requirement is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved.

5

Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe.

*Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974). As to the second element, "the behavior alleged must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Viers v. Baker*, 841 S.E.2d 857, 863 (Va. 2020) (quoting *Almy v. Grisham*, 639 S.E.2d 182, 187 (Va. 2007)). The emotional distress alleged must also be "so severe that no reasonable person could be expected to endure it." *Russo v. White*, 400 S.E.2d 160, 163 (Va. 1991).

Here, Plaintiff alleges that Cyberdata's conduct included "instructing me to falsify my timecard, ignoring my legal concerns, humiliating me with vague performance critiques, and leaving me in limbo without assignments." *See* Dkt. 4 at 6. The conduct that Plaintiff alleges constitutes IIED "does not meet the high bar Virginia sets for outrageous and intolerable behavior." *See Guo v. Xia*, 2018 WL 11509765 *2 (E.D. Va. 2018) (dismissing intentional infliction of emotional distress claim); *Womack*, 210 S.E.2d at 148. Nor does Plaintiff allege that the conduct was done to intentionally cause extreme emotional distress or that Cyberdata knew or should have known that emotional distress would result. As a result, Plaintiff fails to state a claim for IIED as a matter of law.

Finally, as to Claim 5 (Wrongful Discharge/Public Policy, Virginia Law), Plaintiff fails to plead a violation of Virginia law that satisfies a *Bowman* claim. In Virginia, the employment-at-will doctrine provides that employees and employers are free to terminate an employment relationship without the need to express a reason. *Francis v. Nat'l Accrediting Comm'n of Career Arts & Scis., Inc.*, 796 S.E.2d 188, 190 (Va. 2017). In *Bowman v. State Bank of Keysville*, the Virginia Supreme Court acknowledged a narrow exception to this rule based on public policy. 331

6

S.E.2d 797 (Va. 1985).  Currently, Virginia recognizes three such exceptions: "(1) When an employer violated a policy enabling the exercise of an employee's statutorily created right;" "(2) [w]hen the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy[;]" and "(3) [w]hen the discharge was based on the employee's refusal to engage in a criminal act." *Francis*, 796 S.E.2d at 190-91 (2017).  Because Plaintiff pleads neither the violation of a Virginia statute nor the commission of a criminal act, Claim 5 fails to state a claim.

Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Dismiss is **GRANTED in part** and **DENIED in part**.  The Motion is **GRANTED** as to Claim 1 (FLSA Violation), Claim 2 (FLSA Retaliation), Claim 4 (IIED, Virginia Law), and Claim 5 (Wrongful Discharge/Public Policy, Virginia Law) of the Amended Complaint (Dkt. 4), and those claims are **DISMISSED without prejudice**.  The motion is **DENIED** as to Claim 3 (Fraud, Virginia Law).  Plaintiff may file an amended complaint within 21 days; it is further

**ORDERED** that Plaintiff's Motion for Expedited Review of Pending Motions (Dkt. 32) is **DENIED** as moot; it is further

**ORDERED** that Plaintiff's Motion for Sanctions (Dkt. 36) is **DENIED** for lack of good cause shown; and it is further

**ORDERED** that Plaintiff's Motion to Strike for Improper Evidence (Dkt. 38) is **DENIED** for lack of good cause shown.

/s/
_____
Patricia Tolliver Giles
United States District Judge

Entered this 27th day of March, 2026.
Alexandria, Virginia

7